U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
OCT − 2 2020
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Plattsburgh

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| **GRAIGORY BROWN,** | ) | Case No.  8:20-MJ-487 (GLF) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On

or about the date(s) of September 27, 2020 through September 29, 2020 in the county of Franklin in the Northern

District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(c) | The defendant and others did conspire to unlawfully and willfully seize, confine, inveigle, decoy, kidnap, abduct and carry away and hold for ransom and reward and otherwise, any person, and in committing or in furtherance of the commission of the offense, did willfully transport in foreign commerce such person. |

This criminal complaint is based on these facts:

Click here to enter text.

☒     Continued on the attached sheet.

_Complainant's signature_

Special Agent Tamara S. Deming, FBI

_Printed name and title_

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:     October 2, 2020

_Judge's signature_

City and State:     Plattsburgh, New York          Hon. Gary L. Favro, U.S. Magistrate Judge

_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK     )
COUNTY OF CLINTON     )     SS:
CITY OF PLATTSBURGH   )

I, Tamara S. Deming, being duly sworn, deposes and states:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September 2006 after completing New Agent Training at the FBI Academy in Quantico, Virginia. I am assigned to the Plattsburgh Residence Agency (RA) to investigate criminal matters within the jurisdiction of the FBI, including corruption, drug trafficking organizations, money laundering, financial crimes, extortion and other violent crimes.

2. As part of my current duties, I have become involved in an investigation of a violation of Title 18, United States Code, Section 1201(c), conspiracy to commit kidnapping. This affidavit is made in support of a criminal complaint charging Graigory BROWN with a violation of Title 18, United States Code, Section 1201(c)(conspiracy to commit kidnapping). The statements in this affidavit are based on information provided to me by other law enforcement officers, investigative reports, and my investigation of this matter. I have set forth only those facts that I believe are necessary to establish probable cause to believe that Graigory BROWN has committed a violation of Title 18, United States Code, Section 1201(c).

### The Kidnapping

3. On September 28, 2020, at approximately 6:20 a.m., New York State Police were dispatched to a residence on State Route 95, Town of Moira, Franklin County, New York, for a report of a burglary and welfare check on the residents of that address. Upon arrival at the scene, troopers interviewed Witness-1 who stated his parents, Victim-1 and Victim-2, lived at the residence. Witness-1

1

stated his father had not arrived at work that morning, which was odd, so Witness-1 attempted to call him, but he was unable to get ahold of Victim-1 and Victim-2. Witness-1 stated he went to his parents' house and found both their vehicles parked at the residence, but the front door had been forced open. A trooper observed the front door had been forcibly opened and the interior of the residence was in disarray, specifically, the bed was unmade and a jar of dog treats in the master bedroom had been tipped over in an otherwise neat home. A trooper visually checked the residence but was unable to locate Victim-1 or Victim-2.

4.    An emergency geolocation of Victim-1's cell phone showed the phone was near the intersection of State Route 37 and State Route 95 in the Town of Bombay, New York on September 27, 2020 at approximately 10:54 p.m. A second location point was identified at approximately 1:03 a.m. on September 28, 2020, approximately 23.16 miles north of the cell phone tower located at 58 Biondo Lane, North Bangor, New York. This would have placed Victim-1's cell phone in Snye, Quebec, Canada, an area on the Canadian side of the Akwesasne Mohawk Reservation. On September 28, 2020, at approximately 8:55 a.m., agents again attempted to ping Victim-1's device but the records indicated that the device was roaming outside the United States.

5.    Law enforcement searched for video in the area of the Victims' residence and located outside video footage from a location on State Route 95, Moira. At approximately 10:30 p.m. on September 27, 2020, a vehicle can be seen coming into view and stopping in front of the Victims' residence. The vehicle appears to be a pickup truck with running lights.

### Communications with Witness-1

6. At approximately 9:30 a.m. on September 28, 2020, Witness-1 received a phone call from phone number (438) 229-9669 and spoke with Victim-1 briefly. Then a male ("Co-conspirator A") took the phone and stated he had Victim-1 and Victim-2 and that they wanted what Individual-1 owes them or in the alternative,

they wanted Individual-1.

7.    At approximately 9:32 a.m., Witness-1 received a phone call from Co-conspirator A, who stated he didn't want Victim-1 and Victim-2, but that they wanted Individual-1 because Individual-1 "has our stuff." Co-conspirator A demanded the return of 50 kilograms of cocaine or in the alternative, $3.5 million.

8.    Based on my training, experience and knowledge of the case, in this call, Co-conspirator A stated the organization wanted Individual-1 because they believed Individual-1 had stolen 50 kilograms of cocaine. In reality, that 50 kilograms of cocaine had been previously seized by the Drug Enforcement Administration (DEA). Co-conspirator A demanded the return of the 50 kilograms of cocaine in exchange for the Victims, or if the 50 kilograms of cocaine were not available, the organization would accept the value of the 50 kilograms of cocaine, namely $3.5 million, in exchange for Victims' safe return.

9.    At approximately 12:11 p.m., Witness-1 received a phone call from Co-conspirator A who advised that he had just checked on Victim-1 and Victim-2 and they were well. The male stated, "Bring me [Indivdual-2] and it's done tonight." Co-conspirator A also stated, "Get [Individual-1]; you're fucking gold…You get that prick, we're fuckin' golden. We're done tonight."

10.    Based on my training, experience and knowledge of the case, in this call, Co-conspirator A stated the organization wanted Individual-2 in exchange for the Victims, again believing that Individual-1 and Individual-2 had stolen the 50 kilograms of cocaine in the possession of DEA. Co-conspirator A then said they preferred to exchange the Victims for Individual-1.

11.    At approximately 2:49 p.m., Witness-1 received another phone call from Co-conspirator A, who told Witness-1, "Get [Individual-1], it solves everything…Grab [Indidivual-1]. I'll give you my number. When I hear you have

3

[Individual-1], I'll bring [Victim-1 and Victim-2]…I'll send [Victim-2] back, but I'm keeping [Victim-1]. [Victim-1] is staying here until you get [Individual-1] or the stuff. I need [Individual-1] as leverage."

12. Based on my training, experience and knowledge of the case, in this call, Co-conspirator A stated that bringing him Individual-1 solves the kidnapping. Co-conspirator A was concerned about Victim-2's health issues, so he agreed to release her, but made it clear he would keep Victim-1 until he had Individual-1 or the cocaine because he had to use Individual-1 as leverage with the organization.

13. At approximately 4:19 p.m., Witness-1 received another phone call from Co-conspirator A, who wanted to know if Witness-1 had contacted the police. At approximately 5:52 p.m., Witness-1 received another phone call from Co-conspirator A who stated he was worried the police were watching this phone, so he would call from another phone.

14. Agents were able to receive a "proof of life" photograph of the Victims wherein Victim-2 was seated in a chair and Victim-1 was standing next to her. There were a number of trees in the background.

15. At approximately 8:43 p.m., Witness-1 received a text message from phone number (438) 220-6168, stating, "Parents are sleeping. 12PM tomorrow trade for [Individual-1]."

### Return of the Victims

16. Agents were able to geolocate phone number (438) 220-6168 to a house in Snye, Quebec, Canada. On September 29, 2020, Canadian law enforcement surrounded the residence in Snye. Co-conspirator B emerged from the house with a phone in his hand, which Co-conspirator B threw into the bushes. Co-conspirator B stated, "I'm just a messenger. I know the elderly couple is in Montreal."

17. Law enforcement in Canada was able to identify two additional phone numbers involved in the kidnapping. On September 29, 2020, emergency

4

geolocation of those two phone numbers showed the phones were together at a residence in the eastern townships of Quebec, Canada. At that residence, Surete de Quebec were able to observe the same type of chair as the one in which Victim-2 was sitting in the "proof of life" photograph. Additionally, the residence had trees near it, consistent with the background of the "proof of life" photograph.

18.    Surete de Quebec entered and searched the home and located the Victims. Canadian authorities arrested three males at the residence with the Victims, Co-conspirators C, D, and E.

19.    Victim-2 was interviewed and advised agents, in sum and substance, that four people abducted her and Victim-1 from their home in Moira, New York on the night of September 27, 2020. Two individuals forcefully entered their home, while the other two remained in a vehicle outside. At some point, the Victims had hoods or pillowcases placed over their heads. They were taken from their residence to a vehicle that transported them to a river, where they were placed in a boat. They were then transported to and held at the residence from which they were rescued in Quebec's eastern townships.

### Investigation related to Graigory BROWN

20.    During the course of witness interviews on September 28, 2020, members of law enforcement learned from witnesses that Graigory BROWN had stated that he knew where the Victims were. Law enforcement records list BROWN's telephone number as (518) 219-3145.

21.    On September 29, 2020, the FBI, under exigent circumstances, obtained the past 7 days of call detail records (CDRs) for phone number (518) 219-3145, a phone number belonging to BROWN. Among the CDR records was a report providing distance to tower information, also referred to as a Round Trip Timing report (RTT). The RTT report shows the distance between the cellphone and the cellular tower and which of the 120 degree sectors around the cellular tower the cellphone was located in when it connected to the tower. The FBI used a

5

software tool to map the cellular activity of BROWN's cell phone using the RTT report. A call to or from BROWN's cell phone occurred on September 27, 2020 at 10:15:33 p.m. That call occurred within the 120 degree sector of the Victims' residence. A call to or from BROWN's cell phone occurred at 10:48:09 p.m. within the 120 degree sector of Bombay. As stated above, Victim-1's cellphone pinged in the area of Bombay around the same time. Additionally, a license plate reader in the area showed BROWN's pickup truck, a blue 2016 Dodge Ram 2500 pickup truck with New York commercial registration 19304MJ, had been in the area at the time of the kidnapping.

22. On September 29, 2020, law enforcement surveillance was able to locate BROWN in Fort Covington, New York. BROWN was in a gold 2004 Nissan Maxima and successfully evaded law enforcement surveillance. Law enforcement located BROWN's cell phone, with phone number (518) 219-3145, on the shoulder of Foy Elder Road in Fort Covington approximately 10 minutes after BROWN evaded them.

23. Law enforcement tracked the Nissan to Witness-2. On September 29, 2020, a trooper responded to Witness-2's residence and interviewed Witness-2. While at the property, the trooper observed BROWN's blue 2016 Dodge Ram 2500 pickup parked in the yard. Witness-2 stated BROWN left the pickup at his residence and borrowed the 2004 Nissan Maxima.

24. BROWN's Dodge Ram was towed to SP Malone and secured inside for forensic processing. BROWN's Dodge Ram has running lights consistent with the truck observed outside the Victims' residence the night they were abducted, as seen in the video. During a search of BROWN's truck, agents recovered a screwdriver that appears consistent with the item used to gain access to the Victims' home.

25. On October 1, 2020, law enforcement located BROWN and took him into custody. BROWN was provided with his *Miranda* warnings, which he waived and agreed to speak with agents. BROWN stated, in sum and substance, that he and

6

his co-conspirators originally planned to kidnap Individual-1, but determined they could not successfully do so. BROWN then advised his co-conspirators that he knew where the Victims lived. BROWN stated he drove himself and three co-conspirators in his pickup truck to the Victims' residence the night of September 27, 2020, whereupon they kidnapped the Victims. BROWN stated the group was armed with two firearms during the kidnapping.

Attested to by the affiant:

Tamara S. Deming
Special Agent
Federal Bureau of Investigation

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on October 2, 2020 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Gary L. Favro
United States Magistrate Judge
Northern District of New York